UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------- X
UNITED STATES

NOT FOR PUBLICATION

           v.

**MEMORANDUM & ORDER**
10-CR-671(S-1) (KAM)

CHEN KUO,

           Defendant.
--------------------------------------- X

**MATSUMOTO, United States District Judge:**

           Defendant Chen Kuo ("defendant" or "Kuo") is charged

by a December 30, 2010 Superseding Indictment with one count of

conspiring to obstruct, delay and affect commerce, and the

movement of articles and commodities in commerce, by extortion,

and one count of attempting to obstruct, delay and affect

commerce, and the movement of articles and commodities in

commerce, by extortion, in violation of 18 U.S.C. §§ 1951(a)[1] and

3551[2] et seq.  (See ECF[3] No. 47, Superseding Sealed Indictment[4]

---

[1] 18 U.S.C. § 1951(a) provides, in part, that "[w]hoever in any way or degree
obstructs, delays, or affects commerce or the movement of any article or
commodity in commerce, by . . . extortion or attempts or conspires so to do"
shall be guilty of a crime.  Subsection (b) defines "extortion" as "the
obtaining of property from another, with his consent, induced by wrongful use
of actual or threatened force, violence, or fear, or under color of official
right."

[2] 18 U.S.C. §§ 3551 et seq. generally provide penalties for offenses described
in any federal statute.

[3] All citations are to docket 10-cr-671 unless otherwise noted.

[4] The superseding indictment was unsealed by order dated January 7, 2011 (see
ECF No. 49, Order to Unseal Indictment), and the defendant was arraigned on
the indictment on January 10, 2011 (see ECF Minute Entry dated 1/10/2011).

1

("Ind't").)  Trial as to Kuo is scheduled to commence on January 24, 2011.  Now before the court is the government's first motion in limine seeking to introduce at trial: (1) a "sprint report" containing information recorded by 911 operators and broadcast over police radio around 1:09 a.m. on June 21, 2010; and (2) the three corresponding 911 recordings.  (See ECF No. 35, First Motion in Limine ("Mot.") at 1.[5])  For the reasons stated below, the court concludes that the first 911 call recording and corresponding portion of the "sprint report" are inadmissible and that the two subsequent 911 call recordings and corresponding "sprint report" portions are admissible, provided that the government lays the proper foundation.

**BACKGROUND**

As set forth in the Complaint, the Superseding Indictment, and other government submissions, the alleged facts are as follows:

In approximately January or February 2010, Target Bus Company began competing with an existing bus company owned by John Doe #1 ("Victim Bus Company").  (See ECF No. 1,[6] Sealed Complaint as to Chen Kuo ("Kuo Compl.") ¶¶ 2-3.)  Both companies provide transportation services for restaurant workers from New

---

[5] As the First Motion in Limine is not paginated, the court refers to the pages assigned by the Electronic Case Filing System ("ECF").

[6] This citation is to docket 10-mj-931.  The complaint was unsealed by order dated August 13, 2010.  (See ECF No. 3, Order to Unseal Case.)

York City to Poughkeepsie, New York. (Id.) Restaurant owners and workers in Poughkeepsie, New York received business cards from Target Bus Company that looked almost identical to the business cards from Victim Bus Company. (Id. ¶ 3.) The Target Bus Company cards contained two telephone numbers, one of which allegedly belongs to Kuo. (Id.)

Between February 2010 and August 2010, employees from Target Bus Company allegedly attempted to force Victim Bus Company customers to switch companies by taking their cell phones and telling customers that the phones would be returned only if they began to use the services provided by Target Bus Company. (Id. ¶ 4.) Further, on several occasions, Target Bus Company vehicles allegedly parked against Victim Bus Company's vehicles in order to prevent them from loading passengers. (Id. ¶ 5.)

In February 2010, alleged co-conspirator Jiang Yan Hua[7] ("Hua") drove up to a Victim Bus Company van and told John Doe #1 that if Hua found John Doe #2, a Victim Bus Company driver, he would "break his legs." (Id. ¶ 6.) Around that same time period, Hua also allegedly threatened John Doe #2 by approaching him at a gas station and asking "are you afraid of dying[?]" (Id. ¶ 8.) On June 21, 2010, a little after 1:00 a.m., John Doe

---

[7] Hua pleaded guilty on December 29, 2010 to extortion conspiracy, Count One of a two-count Indictment. (See Minute Entry dated 12/29/2010.)

#1 was attacked by three individuals and was severely injured.
(Id. ¶ 9; Mot. at 1.)  Three 911 calls were placed on June 21,
2010, at around 1:09 a.m., to report the attack on John Doe #1.
(Mot. at 1-2.)  According to the government, two of the callers
were eye witnesses to the attack, and the third caller was a
relative of John Doe #1 who called on his behalf.  (Id. at 2;
ECF No. 54, Response in Support of First Motion in Limine
("Resp.") at 1-2.[8])  Further, John Doe #1 identified defendant
Kuo as one of his attackers and as an individual whom he had
seen driving a Target Bus Company van belonging to Hua.  (Kuo
Compl. ¶ 10.)  The following month, on July 19, 2010, at
approximately 1:00 a.m., John Doe #1 received a telephone call
in which the caller threatened to kill his family.  (Id. ¶ 11.)

During a November 10, 2010, status conference, the
court scheduled this case for trial, to commence on January 24,
2011.  (See ECF Minute Entry dated 11/10/2010.)  On December 15,
2010, in anticipation of trial, the government filed the instant
motion in limine.  (See ECF Docket; Mot.)  The "sprint report"
was submitted as an exhibit to the first motion in limine.  (See
ECF No. 35-1, Exhibit ("Sprint Report").)  The court ordered
defendant Kuo to file any response to the government's first
motion in limine by no later than December 23, 2010.  (See ECF

---

[8] As the Response in Support of First Motion in Limine is not paginated, the
court refers to the pages assigned by the ECF.

Order dated 12/16/2010.)  Defendant Kuo did not object or make
any submissions in connection with the government's first motion
in limine.  (See ECF Docket.)  On January 3, 2011, the court
ordered additional submissions from the government in support of
its first motion in limine.  (See ECF Order dated 1/3/2011.)
The government submitted a response in support of its first
motion in limine dated January 7, 2011 and filed on January 10,
2011, submitting to chambers a computer disk with the 911 call
recordings as an attachment.  (See ECF Docket; Resp.)  The court
now considers the government's unopposed motion and supporting
submissions.

## DISCUSSION

### I.    Motions In Limine

The purpose of a motion in limine is to allow the
trial court to rule in advance of trial on the admissibility of
certain forecasted evidence.  See Luce v. United States, 469
U.S. 38, 40 n.2 (1984) (explaining that the motion in limine is
used to "to exclude anticipated prejudicial evidence before the
evidence is actually offered"); see also Palmieri v. Defaria et
al., 88 F.3d 136, 141 (2d Cir. 1996) ("The purpose of an in
limine motion is to aid the trial process by enabling the Court
to rule in advance of trial on the relevance of certain
forecasted evidence, as to issues that are definitely set for
trial, without lengthy argument at, or interruption of, the

trial." (internal quotation marks and citation omitted)); Nat'l.
Union Fire Ins. Co. v. L.E. Myers Co. Group et al., 937 F. Supp.
276, 283 (S.D.N.Y. 1996) (quoting Palmieri, 88 F.3d at 141).
Evidence should be excluded on a motion in limine only when the
evidence is clearly inadmissible on all potential grounds.  See
Baxter Diagnostics, Inc. v. Novatek Med., Inc., No. 94-cv-5220,
1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998); Nat'l Union
Fire Ins. Co., 937 F. Supp. at 287.  Courts considering a motion
in limine may reserve judgment until trial so that the motion is
placed in the appropriate factual context.  See Nat'l. Union
Fire Ins. Co., 937 F. Supp. at 287.  Alternatively, a district
judge is "free, in the exercise of sound judicial discretion, to
alter a previous in limine ruling" at trial as "the case
unfolds, particularly if the actual testimony differs from what
was contained in the [movant's] proffer."  Luce, 469 U.S. at 41-
42.

## II.  Statements of 911 Callers

The government moves to introduce at trial recordings
of three 911 calls containing the statements of three 911
callers made on June 21, 2010 at around 1:09 a.m., shortly after
the alleged attack on John Doe #1.  (See Mot. at 1.)  The
admissibility of the 911 recordings turns on two factors: (1)
whether the statements of the 911 callers, which are reflected
on the recordings, are admissible; and (2) whether the

recordings are admissible.  The court first considers the admissibility of the statements contained in the 911 recordings. The court next addresses the admissibility of the recordings themselves in conjunction with the admissibility of the "sprint report."

The government argues that "[t]he statements made by 911 callers to 911 operators . . . fall within both the 'present sense impression' and 'excited utterance' exceptions to the general prohibition on hearsay evidence" because "[t]he callers reported their observations during and immediately after the attack."  (Id. at 3; see also Resp. at 1-2 & n.1.)  According to the government, two of the callers were eye witnesses to the attack.  (See Mot. at 2.)  The third caller, the government alleges, was a relative of John Doe #1 who "did not personally view the assault, [but] she relayed to the 911 operator her first-hand observations of John Doe #1's physical condition following the assault."  (Resp. at 1-2 & n.1; see also Mot. at 2.)  Further, the government argues that "[a]dmission of the statements made by 911 callers is not prohibited by the Confrontation Clause because statements 'made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency' are not

testimonial."  (Mot. at 4 n.2 (quoting <u>Davis v. Washington</u>, 547 U.S. 813, 822 (2006)).)

*A. Hearsay Evidence*

The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801.  The government in the instant case seeks to introduce the statements of the 911 callers to "corroborate the victim's description of the attack," including "the location of the assault, the number of assailants and the weapon his assailants used."  (Mot. at 2.)  Therefore, the statements of the 911 callers are being offered for the truth of the matter asserted, i.e. the truth of the description of the attack on John Doe #1, and qualify as hearsay evidence. "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."  Fed. R. Evid. 802. To be admissible, then, the statements of the 911 callers must fall under an exception to the hearsay rule.

*B. Present Sense Impression and Excited Utterance Exceptions*

The government argues that the statements of the 911 callers are admissible despite their hearsay status because they fall within the "present sense impression" and "excited utterance" exceptions.  <u>See</u> Mot. at 3; Fed. R. Evid. 803(1)

(present sense impression exception); Fed. R. Evid. 803(2)

(excited utterance exception).  The present sense impression

exception covers statements "describing or explaining an event

or condition made while the declarant was perceiving the event

or condition, or immediately thereafter."  Fed. R. Evid. 803(1).

Statements fitting the present sense impression definition "are

considered to be trustworthy because the contemporaneity of the

event and its description limits the possibility for intentional

deception or failure of memory."  United States v. Jones, 299

F.3d 103, 112 (2d Cir. 2002).  The excited utterance exception,

on the other hand, covers statements "relating to a startling

event or condition made while the declarant was under the stress

of excitement caused by the event or condition."  Fed. R. Evid.

803(2).  The Second Circuit has explained that "the rationale

for this hearsay exception is that the excitement of the event

limits the declarant's capacity to fabricate a statement and

thereby offers some guarantee of its reliability.  Unlike

present sense impressions, an excited utterance need not be

contemporaneous with the startling event to be admissible.

Rather the length of time between the event and the utterance is

only one factor to be taken into account in determining whether

the declarant was, within the meaning of [Federal Rule of

Evidence 803(2)], under the stress of excitement caused by the

event or condition." Jones, 299 F.3d at 112 (internal quotation marks and citations omitted).

However, "[i]t is a condition precedent to admissibility of a statement under either exception that the declarant have personally observed the events described." United States v. Padilla, No. S1 94-cr-313, 1995 WL 261513, at *4 (S.D.N.Y. May 3, 1995); see also WEINSTEIN'S FEDERAL EVIDENCE § 803.03 (stating that the requirements of the present sense impression exception include that "[t]he declarant must have personally perceived the event described"); WEINSTEIN'S FEDERAL EVIDENCE § 803.04 (stating that the requirements of the excited utterance exception include "[a] declarant who appears to have had the opportunity to personally observe the events"); Fed. R. Evid. 803, Advisory Committee Note ("In a hearsay situation, the declarant is, of course, a witness, and neither this rule nor Rule 804 dispenses with the requirement of firsthand knowledge."). This requirement is well established in the case law. See, e.g., Brown v. Keane, 355 F.3d 82, 89-90 (2d Cir. 2004) (noting that "[t]he present sense impression exception applies only to reports of what the declarant has actually observed through the senses, not to what the declarant merely conjectures" and that, under the excited utterance exception, "[t]o be competent as evidence . . . the declarant's factual assertion must rest on personal knowledge" because "[m]ere

excitement . . . not coupled with knowledge of the event described, adds nothing to reliability"); Padilla, 1995 WL 261513, at *4 (explaining that "a declaration, to qualify as a present sense impression or an excited utterance, must be the statement of an actual observer of the event or condition described"); Schering Corp. v. Pfizer Inc. et al., 189 F.3d 218, 233 (2d Cir. 1999) (stating that personal knowledge is required for admissibility of hearsay statement as a present sense impression); United States v. Tocco, 135 F.3d 116, 128 (2d Cir. 1998) (discussing requirement of personal knowledge when reviewing admission of a hearsay statement under the excited utterance exception).

The statements of each 911 caller are analyzed in light of the foregoing requirements.

i. Caller #1

The statements of the first 911 caller ("caller #1")[9] are not admissible under either the present sense impression or excited utterance exceptions to the hearsay rule. At the very outset, within the first ten seconds of the call, caller #1 tells the 911 operator, "I don't know what happened." Rather than describing an incident he actually observed, caller #1 speculates about what has happened, telling the operator,

---

[9] These statements are contained in the recording labeled "911MSG001" in the computer disk provided by the government.

11

"Someone got beaten or got robbed . . . Maybe he got robbed, I guess."  Again during the middle of the call, caller #1 states, "I didn't see what happened, but I see the guy shouting." Finally, when specifically asked by the 911 operator whether caller #1 saw the purported attack, he responds, "I did not see what happened."

Caller #1 does describe seeing blood on the street, telling the 911 operator, "I see some blood on the floor."  He confirms this fact again at a later time during the call. However, because caller #1 did not personally observe the attack, the statements do not serve to corroborate the testimony of John Doe #1 regarding the attack.  Without personal knowledge of the attack, caller #1 cannot link the blood on the street to John Doe #1 or to the alleged attack.

The facts in the instant case are analogous to those in Brown, in which a 911 caller described a shooting outside a bar and the identity of the shooters after hearing gunshots. Brown, 355 F.3d at 85-86.  The 911 caller had previously seen the men she described as the shooters inside the bar carrying guns.  Id. at 88-89.  The recording of the 911 call strongly suggested "that the caller did not witness the shooting, but rather heard the shots and, having recently seen the armed men leave the bar, assumed they were the ones doing the shooting." Id. (internal quotation marks and citation omitted).  The Second

Circuit concluded that, without personal knowledge of the actual shooting, the statements of the 911 callers were mere "surmise" and not based on actual observations, and thus not admissible under either the present sense impression or excited utterance exceptions. Id. at 89-90.

Similarly, in the instant case, caller #1, having seen John Doe #1 screaming and observing blood on the floor, stated three times that he did not see what happened, but rather assumed that John Doe #1 was somehow attacked and bleeding as a result. These observations, like the observations of the 911 caller in Brown, are mere surmise and not based on personal observation. Thus, because caller #1 lacks personal knowledge of the alleged attack on John Doe #1, his statements to the 911 operator are not admissible under either the present sense impression or excited utterance exceptions to the hearsay rule. See Brown, 355 F.3d at 89-90; Padilla, 1995 WL 261513, at *4.

ii. Caller #2

The statements of the second caller ("caller #2"),[10] on the other hand, are admissible as both a present sense impression and an excited utterance. The content of the 911 statements made by caller #2 strongly suggest that he personally witnessed the attack and called immediately thereafter. It is

---

[10] These statements are contained in the recording labeled "911MSG002" in the computer disk provided by the government.

true that the government has a high burden to establish personal knowledge when a declarant is unavailable and, here, it is not clear if this witness is unavailable.  Where a witness is unavailable, courts are reluctant to rely only the declaration itself as proof of knowledge.  See Padilla, 1995 WL 261513, at *5 (stating that when declarant is unidentifiable and unavailable, the burden to establish proof of knowledge is great).  Nonetheless, the government need not show direct proof of knowledge or foreclose all speculation, because "the substance of the statement itself may contain words justifying the inference of the declarant's personal perception."  Id.

In the instant case, the substance of the statements made by caller #2 to the 911 operator strongly suggests personal knowledge.  Caller #2 begins the call by stating, "I've seen a few guys beating up a Chinese guy.  Three Chinese guys beating up one Chinese guy" (emphasis added).  Later in the call, caller #2 states to the operator, "I screamed at them."  These phrases indicate that caller #2 personally witnessed the attack on John Doe #1.  In addition, caller #2 provides the 911 operator with detailed information regarding the attack, including the location, the number and race of the assailants, the race of the victim, how the assailants were dressed, and the type of weapon used by the assailants.  The amount of detail in the statements is also a strong indicator of personal knowledge.  Based on the

review of these statements, the court finds that there is sufficient proof that caller #2 witnessed the attack on John Doe #1, thus satisfying the personal knowledge requirement.

Having determined that caller #2 had personal knowledge of the attack on John Doe #1, the admissibility of the 911 statements under the present sense impression and excited utterance exceptions becomes apparent. Caller #2 was "describing . . . an event," i.e. the beating of John Doe #1, "immediately [after perceiving the event]," i.e. at around 1:09 a.m., shortly after the alleged attack on John Doe #1. (See Mot. at 2; Sprint Report.) Thus, the statements made by caller #2 to the 911 operator are admissible under the present sense impression exception. See Fed. R. Evid. 803(1) (making admissible hearsay statements "describing . . . an event . . . immediately [after perceiving the event]"). Further, caller #2 had just witnessed a startling event, i.e. the beating of John Doe #1 by three assailants. His voice on the 911 call recording clearly reflects his sense of excitement, distress and urgency. Thus, at the time caller #2 made the 911 statements relating to the beating, he was still "under the stress of excitement caused by the event." Consequently, the statements made by caller #2 to the 911 operator are also admissible under the excited utterance exception to the hearsay rule. See Fed. R. Evid. 803(2) (making admissible hearsay statements "relating to a

startling event . . . made while the declarant was under the stress of excitement caused by the event"). See also John v. Masterson, No. 08-0141, 2010 WL 1957876, at *1 (D. Conn. May 14, 2010) (finding statements made by 911 caller to fall within present sense impression and excited utterance exceptions); United States v. Harper, No. 05-cr-6068L, 2009 WL 140125, at *2-*3 (W.D.N.Y. Jan. 20, 2009) (similar).

   iii. Caller #3

        The first portion of the statements of the third caller ("caller #3"),[11] stating that John Doe #1 had been beaten, is inadmissible, but the remaining portions, describing John Doe #1's physical condition and the location of the incident, could be admissible under the present sense impression and excited utterance exceptions. Caller #3 states, in sum and substance, "My uncle was beaten and is bleeding," and subsequently provides the 911 operator with the address of the incident. The government states that John Doe #1 is the "uncle" referred to by caller #3, and concedes that caller #3 did not personally witness the attack on John Doe #1. (See Resp. at 1-2 & n.1.) Caller #3, therefore, lacks personal knowledge of the beating, and her statement to the 911 operator that John Doe #1 was beaten is inadmissible. See Brown, 355 F.3d at 89-90; Padilla,

_____
[11] These statements are contained in the recording labeled "911MSG003" in the computer disk provided by the government.

1995 WL 261513, at *4. The government argues that, to the extent that caller #3 communicated to the 911 operator the information regarding the beating that was related to her by John Doe #1, that statement is admissible as double hearsay. The government argues that the hearsay statement of John Doe #1 to caller #3 is admissible as an excited utterance, and caller #3's statement to the 911 operator is admissible as a present sense impression or an excited utterance. (See Resp. at 2 n.1.) However, the requirement of personal knowledge of caller #3 regarding the attack on John Doe #1 is still not satisfied merely because she obtained the information from John Doe #1. Caller #3 is not describing or relating facts that she personally perceived, but rather relaying information provided to her by others. See Bemis v. Edwards, 45 F.3d 1369, 1373-74 (9th Cir. 1995) (finding that statements of 911 caller were not admissible under present sense impression or excited utterance exceptions to hearsay rule when the caller did not witness the events and was merely stating information related to him by eye witnesses). Thus, the statement of caller #3 to the 911 operator regarding the attack on John Doe #1 is inadmissible.

The remaining portions of her statements, describing the physical condition of John Doe #1 and his location at the time of the call, could be admissible under the present sense impression and excited utterance exceptions. However, the

evidence presented by the government in its first motion <u>in limine</u> is insufficient to lay a proper foundation for admission. There is nothing in the statements to suggest that caller #3 was present at the location of the incident, physically observing the injuries of John Doe #1, or otherwise suggesting personal knowledge of the facts conveyed to the 911 operator. The government asserts that caller #3 was relaying "to the 911 operator her first-hand observations of John Doe #1's physical condition following the assault, including the fact that he had been beaten and was bleeding." (Resp. at 2.) The evidence now before the court, however, does not support or refute the government's assertion that the caller had witnessed the injury to John Doe #1 first hand.

Unlike caller #1, there is nothing in the evidence presented to suggest that caller #3 does not, in fact, have personal knowledge of the facts conveyed to the 911 operator. The government will have the opportunity, at trial, to present proof of personal knowledge to lay the foundation for admission of the statements made by caller #3. If the government can show that caller #3 was present at the scene and personally observed the injuries of John Doe #1 after the attack, the statements to the 911 operator would then be admissible. The statements of caller #3 described a condition, i.e. the physical injuries of John Doe #1 and his location at the time of the call, at the

time she presumably observed the condition. These facts, coupled with personal knowledge, suffice for admission of the statements regarding John Doe #1's physical condition under the present sense impression exception. See Fed. R. Evid. 803(1) (making admissible statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition"). In addition, assuming personal knowledge, caller #3 witnessed a relative with physical injuries, and conveyed statements relating to that condition to the 911 operator while under the stress of excitement caused by the condition. The distress in her voice is evident from the 911 call recording, notwithstanding the use of a Mandarin interpreter. These facts, coupled with personal knowledge, would also make the statements of caller #3 admissible under the excited utterance exception. See Fed. R. Evid. 803(2) (making admissible statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"). See also John, 2010 WL 1957876, at *1 (finding statements made by 911 caller to fall within present sense impression and excited utterance exceptions); Harper, 2009 WL 140125, at *2-*3 (similar).

*C. Confrontation Clause*

The admission of the statements of caller #2, and of caller #3, provided the government lays the proper foundation,

under the exceptions to the general prohibition on hearsay does not end the court's inquiry. The government must also show that admission of these hearsay statements does not violate Kuo's rights under the Confrontation Clause of the Sixth Amendment.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause prohibits "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004). The Supreme Court in Crawford offered no concrete definition for the phrase "testimonial statements" covered by the Confrontation Clause. See id. at 68. The Second Circuit has noted that "Crawford at least suggests that the determinative factor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statements may later be used at a trial." United States v. Saget, 377 F.3d 223, 228 (2d Cir. 2004).

Even though no concrete definition of "testimonial statements" is discernible from the case law, the Supreme Court has ruled on the specific question of the admissibility of 911 statements under the Confrontation Clause. See Davis v. Washington, 547 U.S. 813 (2006). In Davis, the Court held that

"[s]tatements are nontestimonial when made in the course of
police interrogation under circumstances objectively indicating
that the primary purpose of the interrogation is to enable
police assistance to meet an ongoing emergency."  Id. at 822.
The Court identified as "testimonial" statements made "when the
circumstances objectively indicate that there is no such ongoing
emergency, and that the primary purpose . . . is to establish or
prove past events potentially relevant to later criminal
prosecution."  Id.  The Court in Davis identified a number of
factors that supported the finding that the 911 statements at
issue in that case were nontestimonial, including:

> (1) Was the declarant speaking about current events as
> they were actually happening, "requiring police
> assistance" rather than describing past events?
> (2) Would a "reasonable listener" conclude that the
> declarant was facing an ongoing emergency that called
> for help?
> (3) Was the nature of what was asked and answered
> during the course of a 911 call such that, "viewed
> objectively, the elicited statements were necessary to
> be able to resolve the present emergency" rather than
> "simply to learn . . . what had happened in the past?"
> (4) What was the "level of formality" of the
> interview?  For example, was the caller frantic, in an
> environment that was neither tranquil nor safe?

United States v. Cadieux, 500 F.3d 37, 41 (1st Cir. 2007)

(citing Davis, 547 U.S. 2676-77).  Several courts after Davis

have found, consistent with that decision, that statements of

911 callers, made during an ongoing emergency and for the

purpose of obtaining police assistance, are nontestimonial, and

thus admission of such statements does not violate a defendant's rights under the Confrontation Clause.  See Cadieux, 500 F.3d at 41-42 (finding that "[u]nder the Davis guideposts, the statements recorded during the 911 call are nontestimonial hearsay"); United States v. Thomas, 453 F.3d 838, 843-44 (7th Cir. 2006) (concluding that statements made by 911 caller, "describ[ing] an emergency as it happened," were nontestimonial hearsay and did not implicate the defendant's right to confrontation); Blackman v. Ercole, 2009 WL 4891767, at *5 (E.D.N.Y. Dec. 17, 2009) (holding that "911 calls made primarily to describe current circumstances requiring police assistance are not testimonial and, therefore, are not subject to the Confrontation Clause" (internal quotation marks and citation omitted)).  See also Mungo v. Duncan, 393 F.3d 327, 336 n.9 (2d Cir. 2004) (opinion by the Second Circuit, after Crawford but before Davis, expressing doubt that statements made by 911 caller to aid the police in capturing an assailant after an assault would be considered testimonial under Crawford).

In the instant case, application of the factors in Davis indicates that the statements made by caller #2 and caller #3 to 911 operators constitute nontestimonial hearsay and do not implicate Kuo's right to confrontation.  First, both caller #2 and caller #3 describe events as they are occurring or immediately thereafter, rather than merely describing past

events.  Caller #2 describes an ongoing assault – John Doe #1
was beaten by three assailants and the assailants are now
chasing John Doe #1 or fleeing the scene.  Caller #3 describes
the physical injuries of John Doe #1 requiring medical
attention.  Second, a "reasonable listener" would conclude that
both caller #2 and caller #3 were facing an ongoing emergency.
Caller #2 describes an ongoing assault or suspects fleeing the
scene of an assault.  Caller #3 describes facts to summon
medical help.  Third, the questions and answers were necessary
to resolve the ongoing emergency.  The 911 operator questions
caller #2 on the location of the incident, the location of the
victim and assailants, and the type of weapon used by the
assailants – all necessary to determine the need for police
assistance, the location of the incident, and the danger posed
by the assailants.  The 911 operator questions caller #3
specifically on the nature of the emergency.  The call, however,
is cut short when the police arrive at the scene.  Finally, the
level of formality of the calls with both caller #2 and caller
#3 is minimal.  Both callers convey urgency and distress to the
911 operators.  The environment is neither safe nor tranquil
when the callers made the relevant statements to the 911
operators, to the extent that both callers are describing a
medical emergency and caller #2 is describing an ongoing chase.

Under these Davis factors, the statements of caller #2 and caller #3 are nontestimonial because they were "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation [was] to enable police assistance to meet an ongoing emergency," in this case, a potential ongoing assault requiring police intervention and an injured victim requiring medical assistance. Davis, 547 U.S. at 822. Consequently, admission of the present sense impression and excited utterance statements of caller #2 and, if admitted at trial after the proper foundation is laid, of caller #3, would not implicate Kuo's rights under the Confrontation Clause of the Sixth Amendment.

## III. Recordings and "Sprint Report"

The government next seeks to introduce the recordings containing the statements of the 911 callers and the "sprint report" containing information recorded by 911 operators and broadcast over police radio around 1:09 a.m. on June 21, 2010. (See Mot. at 1.) The government argues that "[t]he sprint report itself falls within the 'business record' exception to the general prohibition on hearsay evidence." (Id. at 2; see also Resp. at 2 ("Because the report was created and maintained in the regular course of business by 911 and police-radio operators responding to an emergency, it falls within the business-record exception to the hearsay rule.").) Further, the

government argues that admission of the "sprint report" would not implicate Kuo's right to confrontation because the report is a nontestimonial business record and was not created for use at trial. (See Resp. at 2-3.) The government fails to specifically address the admissibility of the 911 recordings, as opposed to the statements reflected on the recordings. However, because both the 911 recordings and "sprint report" represent records of the 911 calls that have been prepared and/or maintained by 911 and police operators, the court assumes the same arguments outlined above for the "sprint report" apply to the 911 recordings and analyzes the admissibility of both pieces of evidence together.

*A. Hearsay Evidence*

As with the statements made by the 911 callers, the government seeks to introduce the recording of the 911 calls and the "sprint report" to corroborate the testimony of John Doe #1 at trial. (See Mot. at 2.) "The fact of the 911 call and the sprint report itself are relevant because they will corroborate the victim's testimony that he was attacked on June 21, 2010." (Id.) Therefore, the recordings and the "sprint report" are offered for the truth of the matter asserted, i.e. the truth of the 911 call record, including the date and time of the alleged attack. Because they are offered for the truth, the recordings and "sprint report" are hearsay evidence, and must fall within

one of the exceptions to the hearsay rule in order to be

admissible at trial.  See Fed. R. Evid. 801, 802.

   *B. Business Records Exception*

        The government argues that the "sprint report," and

the court assumes the 911 call recording also, are admissible as

business records.  The Federal Rules of Evidence provide that

the following records are exempt from the general prohibition on

hearsay evidence:

> A memorandum, report, record, or data compilation, in
> any form, of acts, events, conditions, opinions, or
> diagnoses, made at or near the time by, or from
> information transmitted by, a person with knowledge,
> if kept in the course of a regularly conducted
> business activity, and if it was the regular practice
> of that business activity to make the memorandum,
> report, record or data compilation, all as shown by
> the testimony of the custodian or other qualified
> witness, or by certification that complies with Rule
> 902(11), Rule 902(12), or a statute permitting
> certification, unless the source of information or the
> method or circumstances of preparation indicate lack
> of trustworthiness.  The term "business" as used in
> this paragraph includes business, institution,
> association, profession, occupation, and calling of
> every kind, whether or not conducted for profit.

Fed. R. Evid. 803(6).  The rule clearly requires that the

foundation for admission of a business record be laid by "the

testimony of the custodian or other qualified witness, or by

certification."  Id.; see also Retirement Plan of UNITE HERE

Nat. Retirement Fund v. Kombassan Holding A.S., __ F.3d __, 2010

WL 5157156, at *6 (2d Cir. Dec. 21, 2010) ("To establish a

proper foundation for a document offered into evidence as a

business record, the custodian or other qualified witness must
testify that the document was kept in the course of a regularly
conducted business activity and also that it was the regular
practice of that business activity to make the record."
(internal quotation marks and citation omitted)).

Other courts analyzing the admissibility of 911
recordings or reports have found them to be admissible as
business records.  See John, 2010 WL 1957876, at *1 ("The record
of [911 telephone call statements] is admissible . . . as a
'business record' . . . ."); Harper, 2009 WL 140125, at *2
("There does not seem to be any dispute here that the [911 call
report] itself meets the requirements for admission as a
business record . . . ."); Padilla, 1995 WL 261513, at *3
("[T]he [911] incident records qualify qua documents for
admission under [the business records exception], as records of
regularly conducted activity.").  The court is inclined to agree
in this case that the 911 recordings and "sprint report" would
qualify as business records and would thus be admissible despite
their hearsay status.  However, the government here has failed
to lay the proper foundation for admission of these reports, as
clearly stated in both the rule itself and the case law.  The
government can, at trial, present evidence, through stipulation
or otherwise, that the custodian of the 911 recordings and
"sprint reports" is able to lay the proper foundation for their

admission.  Only then can the 911 recordings and "sprint report"

be admissible under the business record exception to the hearsay

rule.

*C. Hearsay Within Hearsay*

Even assuming the government presents the proper

testimony or certification at trial to lay the foundation for

the introduction of the 911 recordings and "sprint report" as

business records, this does not end the inquiry.  The recordings

and "sprint report" contain the statements made by the 911

callers.  These callers are under no business duty to report

information to the 911 operators, and thus are not covered by

the business record exception to hearsay.  See Fed. R. Evid. 805

("Hearsay included within hearsay is not excluded under the

hearsay rule if each part of the combined statements conforms

with an exception to the hearsay rule provided in these

rules."); United States v. Cruz, 894 F.2d 41, 44 (2d Cir. 1990)

(noting that multiple hearsay in business record was not

admissible absent "showing that they fit within the hearsay

within hearsay exception"); Padilla, 1995 WL 261513, at *4

(similar).  In this "hearsay within hearsay" situation, the 911

recordings and "sprint report" are admissible only if the

statements made by the 911 callers are themselves covered by an

independent hearsay exception.  Id.

The admissibility of the statements of the 911 callers has already been determined above. The statements made by caller #1 constitute inadmissible hearsay. Consequently, the 911 recording and portion of the "sprint report" corresponding to the call placed by caller #1 are inadmissible as well. On the other hand, the statements made by caller #2 are admissible under the present sense impression and excited utterance exceptions to the hearsay rule. Consequently, the 911 recording and corresponding portion of the "sprint report" would also be admissible if the government lays the proper foundation for the introduction of this evidence as business records. Finally, the statement of caller #3 regarding the fact that John Doe #1 was beaten is inadmissible hearsay. However, the statements of caller #3 regarding the physical condition of John Doe #1 and his location at the time of the call could be admissible, provided the government show proof of personal knowledge of his condition. Consequently, only those portions of the statements of caller #3 in the 911 recording and "sprint report" could be admissible if the government laid the proper foundation for their introduction as business records.

*D. Confrontation Clause*

Assuming the government can lay the proper foundation for introduction of the admissible portions of the 911 recordings and "sprint report," admission of this evidence at

trial would not implicate Kuo's right to confrontation. The Supreme Court recognized in Crawford that business records are generally considered nontestimonial for Confrontation Clause purposes. Crawford, 541 U.S. at 56. More recently, the Supreme Court clarified that "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because – having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial – they are not testimonial." Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527, 2539-40 (2009). Similarly, the Second Circuit has held that "[b]ecause business records cannot be made in anticipation of litigation or include observations made by law enforcement personnel, they bear little resemblance to the civil-law abuses the Confrontation Clause targeted" and thus "where a statement is properly determined to be a business record as defined by Fed. R. Evid. 803(6), it is not testimonial within the meaning of Crawford, even where the declarant is aware that it may be available for later use at trial." United States v. Feliz et al., 467 F.3d 227, 234, 236 (2d Cir. 2006).

In the instant case, the 911 recordings and "sprint report" contain the statements made by the 911 callers and the information gathered by the 911 operators and broadcast over police radio. Proper foundation for admission of this evidence

as business records would establish that the recordings and "sprint report" are prepared and maintained in the regular course of business by the 911 police operators and that the records are generated and kept for the purpose of assisting the police in addressing ongoing emergencies, and not for later use at trial to prove facts. If the government lays the proper foundation, the recordings and "sprint report" would be "properly determined to be [] business record[s]," "created for the administration of an entity's affairs," and are nontestimonial. See Melendez-Diaz, 129 S. Ct. at 2539-40; Feliz, 467 F.3d at 236. Their admission at trial, therefore, does not implicate Kuo's rights under the Confrontation Clause of the Sixth Amendment.

## CONCLUSION

For the reasons set forth above, the court makes the following determinations regarding the admissibility of the evidence presented in the first motion in limine: (1) The statements made by caller #1 are inadmissible hearsay, and the recording of the 911 call and portion of the "sprint report" corresponding to caller #1 are therefore also inadmissible; (2) The statements of caller #2 are admissible under the present sense impression and excited utterance exceptions to the hearsay rule, and the 911 recording and portion of the "sprint report" corresponding to caller #2 are admissible, provided the

government lay the proper foundation for their admission as business records; (3) The statement of caller #3 regarding the attack on John Doe #1 is inadmissible hearsay, and the recording of that portion of the 911 call and portion of the "sprint report" corresponding to that statement by caller #3 are also inadmissible; and (4) The statements by caller #3 regarding the physical state of John Doe #1 and his location at the time of the call could be admissible, provided the government establishes personal knowledge of the caller, and the 911 recording and corresponding portion of the "sprint report" would then also be admissible if the government lays the proper foundation for their admission as business records.

SO ORDERED.

Dated: January 18, 2011
        Brooklyn, New York

                              _____/s/_____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge